JESSIE DOUGLAS et al. v. THE RICHMOND AND DANVILLE
RAILROAD COMPANY et al.

*Removal to United States Circuit Court.*

1. A stockholder in a resident corporation institutes an action against it and a non-resident corporation, alleging, among other things, that, under a contract between them, the latter holds a majority of the stock of the former and dominates it; that it has wrongfully diverted its funds; that, under its control, the former is about to unlawfully issue certain mortgage bonds, and asking for an account and an injunction, and for other relief: *Held*, that the resident corporation is a proper and necessary defendant, and that the action is not removable into the United States Circuit Court, on petition of the non-resident defendant corporation.

2. In such action, the controversy is not wholly between citizens of different States, nor is there a separable controversy between the plaintiffs and the non-resident corporation.

106—5

MOTION by the defendant, the Richmond and Danville Railroad Company, to remove this action to the United States Circuit Court in and for the Western District of North Carolina, heard before *Graves, J.,* at August Term, 1889, of GUILFORD Superior Court.

It appears that the plaintiffs are citizens of this State, within the district named; that the defendants, the Northwestern North Carolina Railroad Company and the North Carolina Railroad Company are corporations of this State, within said district; that the defendant petitioner is a nonresident corporation of the State of Virginia, and the defendants H. H. Marshall and E. A. Barber are citizens of the last named State.

The plaintiffs allege in their complaint that the defendant, the Northwestern North Carolina Railroad Company, is a corporation sufficiently organized under the laws of this State; that they are stockholders therein, and have been since about the time of its organization, and have respectively fully paid for their stock; that prior to March of 1872, said company had graded its road from Salem to Greensboro, a distance of about twenty-nine miles; that a large part of the cross-ties for the said road had been purchased, several depot buildings erected, and the company owned, besides its franchise, much other property of great value, the whole of the value of $200,000; that an agreement was made by and between the last named corporations, whereof the following is a copy :.

"This agreement made and entered into this the 29th day of March, in the year 1872, by and between the Northwestern North Carolina Railroad Company, a corporation chartered by the State of North Carolina, party of the first part, and the Richmond and Danville Railroad Company, a corporation chartered by the State of Virginia, party of of the second part—

" Witnesseth, That the said party of the first part, in consideration of the covenants, agreements and understand-

ings of the said party of the second part, hereinafter set forth, doth hereby agree and bind itself to the said party of the second part—

" 1. That it will, upon the execution of this agreement, issue and deliver to the said party of the second part scrip for sixteen hundred shares of its capital stock, to be held and used by the said party of the second part as and for so many shares of full-paid stock.

" 2. That it will issue and deliver to the said party of the second part its coupon bonds to the amount of five hundred thousand dollars in sums of not more than one thousand, and not less than one hundred dollars, payable at a period or periods of not less than nor more than thirty years from this date, at the option of said party of the second part, and bearing interest at the rate of six per centum per annum, payable semi annually, coupons for said interest to be attached to said bonds, and that it will, at the same time execute, deliver and have lawfully and properly a good and sufficient deed of trust, in all its property, rights, privileges and franchises, to secure the said bonds and the interest that may accrue thereon—said deed to be in such form as to meet the approval of the said party of the second part, and so as to constitute the first lien upon all said property, rights, privileges and franchises.

" 3. That the said party of the first part will at once proceed to demand and collect, as far as it can, all the unpaid subscriptions to its capital stock now outstanding, and as soon as collected pay the same to the said party of the second part: *Provided, however,* that the said party of the first part shall not be bound to demand the unpaid balance of about twenty-five thousand dollars on the subscription of Forsyth County, N. C., but unless said balance is paid by said county it (that is said county) shall be entitled to subscription for seven hundred and fifty shares only.

"4. That the said party of the first part will at once deliver and hand over to the said party of the second part all the property, material and supplies of every kind which it has on hand, or which it has provided or contracted for.

"5. That the said party of the first part will, if so requested by the said party of the second part, cause a reorganization of its Board of Directors in accordance with the wishes of the said party of the second part, either by a meeting of its stockholders, to be called for that purpose, or by the action of its Board of Directors then in office. And in consideration of the foregoing agreements and covenants on the part of the said Northwestern North Carolina Railroad Company the party of the first part, the said Richmond and Danville Railroad Company, party of the second part, doth agree with and bind itself to the said party of the first part—

"1. That it will promptly complete for use and operation all that part of the line of the railroad of said party of the first part lying between Greensboro and Salem in North Carolina, providing therefor all necessary labor, material, iron and other supplies, which are not now on hand, or which may not have been provided by the said party of the first part, so as to finish that part of said line in a substantial, durable and permanent style; with a good "T" rail, weighing not less than fifty pounds to the yard; and that it will also build needful and customary structures and buildings, so that said line of railroad shall be ready for practical use on or before the 1st day of January, 1873.

"2. That it will provide said line of railroad, when complete for use as aforesaid, with a sufficient and suitable equipment of rolling stock and machinery for its convenient and continued operation, upon such terms as may hereafter be agreed upon by the parties.

"3. That if the net earnings of said line of railroad shall be insufficient to pay the interest on the bonds aforesaid as it becomes due, it (the said party of the second part) will

advance for and during the period of five years from the first day of February, 1872, such sums of money as may be necessary to make up the deficiency, and prevent the property conveyed in the deed of trust aforesaid, or any part thereof, from being sold during said period of five years on account of any default made in the payment of interest; but any money so advanced is to be held as a debt against said party of the first part, and recoverable, with interest at the rate of eight per cent. per annum from the time of payment, at any time after the said five years have elapsed, and the said party of the second part shall have the same lien upon the property, &c., conveyed in said deed, that any unpaid holder of coupons would have.

" 4. The said party of the second part, moreover, agree to pay the following debts due by said party of the first part, to-wit: Debt due F. & H. Fries, in the principal sum of $15,000; debt due J. G. Lash, in the principal sum of $7,500; debt due E. Belo, in the principal sum of $19,446.55, together with any interest which has accrued, or may accrue, thereon up to time of payment; also such other just demands against said party of the first part now executing, as the same have been, or shall be, hereafter liquidated and ascertained, not exceeding altogether the sum of two thousand dollars, all of which said debts to become due and payable by the said party of the second part, as soon as the bonds aforesaid, and the mortgage or deed of trust to secure them, shall have been properly executed and delivered as aforesaid, and the scrip for the said sixteen hundred shares of stock shall have been issued and delivered to the said party of the second part.

"It is distinctly understood and agreed that the said Northwestern North Carolina Railroad Company, party of the first part, shall procure the cancellation of all deeds of trust or mortgages which it has heretofore executed, that the

deed contemplated by the agreements shall constitute the first lien on all its property, rights, privileges and franchises.

"It is, moreover, understood and agreed that the Richmond and Danville Railroad Company, party of the second part, may make such disposition of the bonds aforesaid as to it may seem most judicious.

"Witness," &c.

That in pursuance of such contract, certificates for 1,000 shares of said stock were issued to the defendant petitioner, and also the $500,000 of bonds secured by a deed conveying the property of the company owning the road as so contemplated; that—

"7. The plaintiffs allege, upon information and belief, that the said contract of March 29, 1872, although absolutely in form, was not so intended by the parties thereto; and that the delivery of the $500,000 in bonds, and the issue of 1,600 shares of its capital stock by the Northwestern North Carolina Railroad Company, was with the purpose and intent that the said Richmond and Danville Railroad Company should hold the same as security for the payment of such sum or sums of money as should be expended by said company in the completion of said road, and lawful interest; or, if the said bonds should be disposed of by the said Richmond and Danville Railroad Company, that the proceeds thereof should be fully accounted for; and that the object and intention of the mortgage and contract was to secure the repayment of such an amount to said company, and no more; and that upon the payment thereof by the operating of said road and the receipt of the earnings and income therefrom, the said stock and bonds were to be returned to and become the property of said Northwestern North Carolina Railroad Company; that, in view of this understanding and agreement, the said Richmond and Danville Railroad Company have never parted with said bonds or made any absolute disposition of the same, but,

by virtue of a provision in said contract, has deposited said bonds with the said Northwestern North Carolina Railroad Company as collateral security for the payment of its rental, and the said bonds, or nearly all of them, are now held by the said Northwestern North Carolina Railroad Company as aforesaid; that the defendant petitioner did not comply with and perform said contract on its part, in many specified material respects; that it did not complete said road; that so far from finishing said road, as required by said contract, the same has not yet been completed, either as to the construction of its road-bed, cross-ties or iron rails, or as to the buildings or other structures necessary to its successful operation according to the terms of said contract; nor was said road put into such condition as to run trains thereon, or to use and operate the same, until about the middle of August, 1873.

" 11. That, as plaintiffs are informed and believe, the said Richmond and Danville Railroad Company has paid tolls and rents to itself for the use of its road-bed, depots, turntables, side-tracks, and in the hire of hands to operate the same, to a large amount, and charged the same to the expense account of said Northwestern North Carolina Railroad Company improperly—to the loss, injury and damage of the said Northwestern North Carolina Railroad Company to the amount of several thousand dollars, the precise amount not known to the plaintiffs.

" 13 That, in pursuance of the contract between the Northwestern North Carolina Railroad Company and the Richmond and Danville Railroad Company, there were issued by the former and delivered to the latter company sixteen hundred shares of the capital stock of the former company of the par value of one hundred dollars each, as paid-up stock, and also bonds of the former company to the amount of five hundred thousand dollars, bearing interest at the rate of six per cent. per annum, payable semi-annually, with

coupons attached to cover said interest; and that the said Northwestern North Carolina Railroad Company, in pursuance of said contract, executed and delivered to said Richmond and Danville Railroad Company a deed of trust, conveying to H. H. Marshall and E. A. Barbour, trustees, who are herein sued only as such trustees, all its property, rights, privileges and franchises to secure the said bonds and the interest that might accrue thereon, a copy of which is hereto attached as a part of this complaint.

"14. That, as the plaintiffs are informed and believe, although the Richmond and Danville Railroad Company did not put the said road in order for use and operation until about the middle of August, 1873, notwithstanding its agreement to put the same in running order by the 1st day of January, 1873, yet said Richmond and Danville Railroad Company has charged up to said Northwestern North Carolina Railroad Company interest on said bonds from the __ day of _____ to the amount of _____, contrary to the true intent and meaning of said contract, it not being the purpose of said company to pay to said Richmond and Danville Railroad Company interest prior to the completion of said road.

"15. That, as these plaintiffs are informed and believe, the profits received by the Richmond and Danville Railroad Company from the operation of the said Northwestern North Carolina Railroad Company's line of road would, by the present time, if properly applied, have paid off the entire indebtedness of said last named company, and have left a large balance for dividends on its capital stock.

"16. That, as these plaintiffs are advised and believe, the said Richmond and Danville Railroad Company, chartered as aforesaid—under the laws of Virginia—had no power or authority under its said charter to purchase or hold the aforesaid stock or bonds of the said Northwestern North Carolina Railroad Company, as the last named road did not

and does not now connect with the said Richmond and Danville Railroad at any point.

"17. That, as the said Richmond and Danville Railroad Company received from the said Northwestern North Carolina Railroad Company the sums of five hundred thousand dollars in first mortgage bonds and one hundred and sixty thousand dollars of its capital stock (being a controlling interest in the same), the said securities aggregating six hundred and sixty thousand dollars, of which amount it claims to have spent only the sum of two hundred and eighty-seven thousand six hundred and ninety-four dollars and thirty cents ($287,694.30) in the construction of said road, and, moreover, has utterly failed to complete said road from the Junction to Greensboro, and to erect depot buildings and other needful and customary structures, all of which it was bound to do by its said contract, the plaintiffs are informed and believe that the said contract, even if in its inception it intended to convey the absolute title to said bonds and stock (which the plaintiffs deny), is no longer binding in law or in conscience upon the said Northwestern North Carolina Railroad Company, and that the said bonds and stock ought to be returned and become the property of the said Northwestern North Carolina Railroad Company on' the repayment by it to the said Richmond and Danville Railroad Company of the amount properly expended by said last named company in the construction of said road, with lawful interest thereon.

"18. That the charter of the said Northwestern North Carolina Railroad provided that the said road should be constructed in divisions—the first division to constitute that portion of said road lying east of the towns of Winston and Salem, which has been in operation since August, 1873; that no attempt was made to carry said road beyond said towns for about fourteen years; that the said Richmond and Danville Railroad Company, by force of its controlling interest

in the capital stock, so improperly acquired and held as aforesaid, has elected its own officers and agents as officers of the Northwestern North Carolina Railroad Company, and, through them, is attempting, or pretending, to extend the said first division beyond the point prescribed by the charter, and to issue bonds secured by mortgage on said first division to a very large amount, with the pretended purpose of constructing said extension to the town of Wilkesboro, all of which actings and doings are without authority of law and in gross violation of the rights and interests of the stockholders of the said Northwestern North Carolina Railroad Company.

"19. That the said Richmond and Danville Railroad Company, through its officers and agents, have assumed to manage and control the business and operation of the said Northwestern North Carolina Railroad Company, and to receive its gross earnings from its construction in 1873 to the present time, amounting to over seven hundred thousand dollars, for all of which it is liable to account to the said Northwestern North Carolina Railroad Company, but has failed to do so.

"20. That the officers of said Northwestern North Carolina Railroad Company, so elected and controlled by the Richmond and Danville Railroad Company as aforesaid, have failed to call regular annual meetings of the stockholders, as required by the charter and by-laws of said company—at one time not calling any such meeting for the period of nearly eight years—and have utterly failed to render to the stockholders, or any committee thereof, detailed statements showing the operations, receipts and disbursements of said company, as it was their duty to do; and have further failed to declare and pay to said stockholders the dividends to which they were justly entitled.

"21. That at a meeting of the stockholders of the said Northwestern North Carolina Railroad Company, held in

the town of Winston on the 21st day of April, 1888, the said Richmond and Danville Railroad Company, by means of the controlling interest so acquired and held by them as aforesaid in the capital stock of said Northwestern North Carolina Railroad Company, instigated and carried through said meeting, in spite of the written protest of the plaintiffs and other stockholders, a resolution authorizing the board of directors of said company to take up the existing mortgage bonds and to issue new bonds at the rate of fifteen thousand dollars per mile of the entire line of road, including the proposed extension, to the amount of about fifteen hundred thousand dollars ($1,500,000), and to secure the payment of the same, with interest thereon, by a first mortgage on all the property, rights and franchises of said company, and to issue additional capital stock at the rate of fifteen thousand dollars per mile to the amount of about one million five hundred thousand dollars, and to place the same upon the market; that the said issue of said bonds and stock as a lien upon the first division of said road, with the intent of devoting the proceeds thereof to the construction of the Yadkin Valley division of said road, is not authorized by the charter of said road, is in gross violation of the rights of stockholders in said first division, and will result in practically destroying the value of their stock, and that the said board of directors are now proceeding to carry out the purpose of the resolution.

"Wherefore, the plaintiffs demand judgment—

"1. That the contract and mortgage be declared a security only for the amount necessarily expended by the Richmond and Danville Railroad Company in the construction of the Northwestern North Carolina Railroad Company from Greensboro to Winston, and that an account be taken to ascertain the true amount thus expended and the loss and damage resulting to the Northwestern North Carolina Railroad Company from the failure of said Richmond and Dan-

ville Railroad Company to complete said road according to its contract.

"2. That an account be taken of the gross earnings and expenses of operating the Northwestern North Carolina Railroad Company.

"3. That an account be taken of all moneys received by the Richmond and Danville Railroad Company from the earnings of the Northwestern North Carolina Railroad Company, and from the sale of its bonds and stock, or from any other source connected with said road.

"4. That if any surplus moneys shall be found belonging to the Northwestern North Carolina Railroad Company, that the board of directors thereof be required to declare dividends in favor of its stockholders, and to pay out the same.

"5. That upon its being ascertained that the Richmond and Danville Railroad Company has been fully reimbursed for its outlay in the construction of the said Northwestern North Carolina Railroad, the bonds and stock issued to it as said security be delivered up to be cancelled.

"6. That the board of directors of said Northwestern North Carolina Railroad Company be enjoined from issuing or in any way disposing of any bonds or stocks constituting, in any way, a lien upon said first division of said road, for the purpose of the construction or completion of any other division of said road.

"7. And for such other and further relief as the nature and circumstances of the plaintiffs' case may require and to the Court may seem meet and proper."

The defendants demurred to the complaint, substantially, upon the ground that it did not state facts sufficient to constitute a cause of action.

The defendant (petitioner) contended:

1. That the case was removable under the act of Congress of March 3d, 1887, because "there was a controversy between citizens of different States" in this case. That is,

"that all the real parties in interest on the one side are citizens of a different State from all the defendants on the other side."

2. That the controversy between the Richmond and Danville Railroad Company, defendant, and the plaintiffs, was a separable controversy, which the Richmond and Danville Railroad Company, a citizen of the State of Virginia, had the right to remove to the Circuit Court of the United States.

His Honor held both these questions against the defendant, the Richmond and Danville Railroad Company, and refused to remove either the whole case or the alleged separable controversy, and directed the parties to proceed with the case.

No other questions arose or were argued.

From this judgment, the Richmond and Danville Railroad Company, having excepted, appealed to this Court.

*Mr. R. M. Douglas,* for plaintiffs.
*Messrs. D. Schenck* and *F. H. Busbee,* for defendants.

MERRIMON, C. J.—after stating the case: It is not pertinent or proper to consider and determine here the sufficiency of the plaintiff's cause of action. The sole question presented for our decision is, is the action one which must, for the causes alleged in the petition, be removed, as to the petitioner, to the Circuit Court of the United States?

The Act of Congress, approved March 3d, 1887 (24 U. S. Stats. at Large, p. 552), provides, among other things, in section 2 thereof, as follows: "And when, in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the Circuit Court of the United States for the proper district." It is conceded that

the cause of action alleged in the complaint constitutes a "controversy," of which such Circuit Court might have jurisdiction, in cases contemplated and intended by the statute.

But it is contended by the appellees that such controversy is not "*wholly*" between citizens of different States, and, therefore, the action cannot be removed. This contention, in our opinion, is well founded. It appears that the plaintiffs are citizens of this State; that the defendants, the Northwestern North Carolina Railroad Company and North Carolina Railroad Company are likewise corporations of this State, and that the other defendants, including the petitioner, are citizens of the State of Virginia. Plainly, if the parties, plaintiffs and defendants, are all material and necessary as made, or if one of the defendants, a citizen of this State, is a material and necessary party defendant, and the citizenship of the several parties is as just stated, then the action cannot be removed, because the controversy is not *wholly* between citizens of different States. Hence, it is not denied by the appellant that if the defendant, the Northwestern North Carolina Railroad Company, is a material and necessary party defendant, and the controversy cannot "be fully determined between" the plaintiffs and the defendants petitioner without it as a party, then the action cannot be removed. It is contended, however, by the petitioner that the Northwestern North Carolina Railroad Company is not a necessary party defendant; that in contemplation of law it is, and must be, treated as a party plaintiff. We cannot think so. If the allegations of the complaint are well founded, the defendant petitioner purports to own a majority of the shares of the capital stock of that company, elects its officers, directs and controls its actions in all respects, and it, under the direction and by the procurement of the petitioner, has done, and does, the unlawful, unwarranted acts and injuries of which the plaintiffs complain; it denies their

right—that their allegations are true—and refuses to redress their alleged grievances. The action is brought directly against it by a minority of the stockholders of that company, to compel it and the defendant petitioner, which holds a majority of the shares of its capital stock and dominates it, to account for its property, injuries done to the same, the use and rents of it, its money, its rights and credits, to compel the petitioner to surrender its coupon bonds secured by the deed of trust mentioned, to surrender the shares of the capital stock of the company held by the petitioner, which it alleges it took and holds as security merely, and to account for property, moneys, &c., diverted unlawfully and wrongfully to the use and purposes of the petitioner. It seems to us very clear that the plaintiffs' cause of action is against the Northwestern North Carolina Railroad Company as well as the petitioner, and that it is a necessary and proper defendant in this action. Their controversy is directly with that company, and with the petitioner who controls it and claims to own a majority of the shares of its capital stock. A chief ground of the action is that the officers of the company and the petitioner holding a majority of the shares of its capital stock, wrongfully, injuriously and oppressively, deprives the plaintiffs of their rights and endamages them in the ways and by the fraudulent means alleged. The Northwestern North Carolina Railroad Company is, therefore, a material party defendant and a citizen of this State. Hence, the action cannot be removed on the ground that the controversy is wholly between citizens of different States. *O'Kelly* v. *Railroad*, 89 N. C., 58; *Gudger* v. *Railroad*, 87 N. C., 325; *Hyde* v. *Reeble*, 104 U. S., 407.

What has been already said serves to show that the controversy between the parties cannot "be fully determined as between them," if the action shall be divided and one part of it shall remain in the State Court and the other part sent

to the Circuit Court of the United States. The cause of action is not divisable. The State Court could not grant the relief demanded by the plaintiffs in scarcely any respect, in the absence of the petitioner defendant; nor could the Circuit Court of the United States grant the relief demanded against the petitioner in the absence of the other principal defendants. Their liability, if it exists, is, to a large extent, common, and the remedy, to a like extent, must be against them jointly. This is too obvious to require further explanation. What we have said rests upon the supposition that the plaintiffs have alleged sufficiently a well-founded cause of action. Whether they have or not, as we have said, is a question not now before us to be decided. *Ayer* v. *Wiswall*, 112 U. S., 187; *Railroad Co.* v. *Wilson*, 114 U. S., 60; *Railroad Co.* v. *Ide*, *ibid*, 52; *Thorne Wire Hedge Co.* v. *Fuller*, 122 U. S., 535; *Lordly* v. *Worthington*, 121 U. S., 179.

It is not the purpose of the Act of Congress cited to allow or require that a civil action wherein the controversy is not wholly between citizens of different States, but is between citizens of the same State, and others, citizens of a different State or States, to be removed to the Circuit Court of the United States, as to a non-resident defendant, unless such controversy can " be fully determined as between them"— all the parties to the action, as constituted therein. If it were otherwise, an action could never be completely determined, and there would be, practically, a denial of right and justice. It is only where there is more than one defendant in the action, and one or more of them are citizens of another or other States, and the cause of action as to a non-resident defendant may be divided and fully determined, as to him, as if he had remained in the action in the State Court, that he has the right to have the action, as to him, removed into the Circuit Court of the United States. Otherwise, complete justice could not be done. The purpose of the law, in allowing such removals of actions, is not to

allow or help parties to evade justice, but to enable them to avoid, in a measure, possible local prejudice, to promote fair convenience of parties, and to give non-residents the advantage, if there be any, of litigating in a Court, in a larger sense, common to all the States of the Union.

Affirmed.